UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

M.F.., *individually and on behalf of,* J.F.,

                                              Plaintiff,

                      -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                                              Defendant.

---

23 Civ. 2017 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff M.F. brought this action on behalf of her child, J.F., against the New York City

Department of Education ("DOE"), seeking to enforce a pendency implementation agreement

pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*

Under the agreement, DOE had agreed to pay for J.F.'s tuition at the Manhattan Children's

Center ("MCC"). Dkt. 1 ("Compl."). After M.F. filed the Complaint in this case, DOE, which

had made some payments towards the agreement, made the final requested tuition payments and

moved to dismiss the case as moot. M.F. then filed a First Amended Complaint, which dropped

the claim for payment of outstanding tuition, but continued to pursue reasonable attorney's fees

and costs she incurred in litigating this action, on the grounds that she had been a prevailing

party. Dkt. 22 ("FAC").

Pending now is DOE's motion to dismiss the FAC for lack of subject matter jurisdiction

under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6). *See* Dkts. 17, 23. For the reasons that follow, the Court denies

the motion under Rule 12(b)(1) but grants the motion under Rule 12(b)(6).

## I.    Background[1]

J.F., age 12, suffers from autism spectrum disorder, attention deficit hyperactivity disorder ("ADHD"), feeding difficulties, and dysphasia. FAC ¶ 22. J.F. qualifies as a child with a disability under the IDEA. *Id.* ¶ 5.

On July 5, 2016, M.F filed a due process complaint, alleging that DOE had failed to provide J.F. with a free appropriate public education ("FAPE") for the 2016–2017 school year. *Id.* ¶¶ 23, 26. In her complaint, M.F. requested that DOE fund J.F.'s tuition at the MCC, along with home-based special education and language therapy services. *Id.* ¶ 26. On March 17, 2017, the Impartial Hearing Officer ("IHO") ruled in M.F.'s favor and granted the relief requested. *Id.* ¶ 27.

From 2017 on, J.F. continued to attend the MCC. *Id.* ¶ 29. For the 2022–2023 school year, J.F. again enrolled there. *Id.* ¶ 30. On July 11, 2022, M.F. filed a second due process complaint, alleging that DOE had failed to provide J.F. a FAPE for the 2022–2023 school year.[2] *Id.* ¶ 31. On December 7, 2022, the DOE entered into a pendency implementation agreement. *Id.* ¶ 32. That agreement confirmed the parties' understanding that the MCC was J.F.'s last agreed-upon placement.[3] Dkt. 20 ("Def. Mem.") at 1–2. Under the agreement, DOE was

---

[1] The Court draws the facts in this decision principally from the FAC. For purposes of the motion to dismiss under Rule 12(b)(1), the Court may refer to evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The Court, for this purpose, has considered the declarations submitted by Theresa Crotty, Dkt. 18 ("Crotty Decl.") and Thomas Lindeman, Dkt. 19 ("Lindemann Decl."), both submitted by defendants.

[2] The record before this Court is sparse as to the details of this dispute.

[3] The IDEA's stay-put provision provides in relevant part that "during the pendency of any proceedings conducted pursuant to [20 U.S.C. § 1415] . . . the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The term "then-current educational placement" in the stay-put provision typically refers to the "child's last agreed-upon educational program before the parent requested a due process hearing." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020). The pendency agreement confirmed

obligated to fund J.F.'s tuition at the MCC and related services while the administrative action before the IHO was being litigated.[4]

Because of the then-pending administrative action, the MCC did not require M.F. to make immediate, up-front payments covering the full tuition for that term. FAC ¶ 33. Instead, it allowed M.F. to make reduced payments at monthly intervals. *Id.* ¶ 33. The DOE agreed to reimburse M.F. for the tuition she paid directly to the school, and to directly pay the school the remainder of the tuition owed. *Id.*

DOE initially reimbursed M.F. for tuition paid directly to the MCC. By early 2023, the FAC alleges, DOE had ceased to meet its reimbursement obligations under the agreement. *Id.* ¶ 35. On January 25, 2023, M.F.'s counsel sent DOE a tuition affidavit and proof of attendance, showing that DOE owed M.F. $6,600 in tuition; M.F. did not receive a response from DOE. FAC ¶¶ 35–36. M.F.'s counsel sent follow-up emails to DOE about the missing payments on January 31, 2023, and February 6, 2023; again, DOE did not respond. *Id.* ¶¶ 37–38. On February 2, 2023, M.F.'s counsel sent another email with a tuition affidavit and proof of attendance, asking DOE to reimburse M.F. for an additional $3,300. *Id.* ¶ 39. On February 24, 2023, after not receiving a response, M.F.'s counsel sent another email, this time noting that it had been "30 days, and the parent will be filing a federal enforcement action." On March 2, 2023, M.F.'s counsel sent DOE a final follow-up email, stating that DOE owed M.F. a total of $16,500 in tuition. *Id.* ¶ 42. Again, DOE did not respond. *Id.* ¶ 43.

This action followed.

---

that the MCC was J.F.'s last agreed upon placement, allowing J.F. to attend there while the administrative proceeding was pending.

[4] In its reply brief, DOE notes that the parties eventually settled at the administrative level. Dkt. 25 at 2. Neither party reports when the administrative action was settled.

II.    **Procedural History of This Case—and DOE's Payment of the Amounts Due**

On March 9, 2023, M.F. filed the initial Complaint in this action.  It alleged that DOE

had failed to reimburse M.F. for $16,500 in tuition payments it had paid to the MCC, and that

there was an additional balance due to MCC of $52,110 in tuition payments for J.F. for the

2022–2023 school year.  *Id.* at p. 8.  It sought: (1) to enforce the pendency implementation

agreement pursuant to 20 U.S.C. § 1415(j) so as to require DOE to make these payments, plus

interest; and (2) reasonable attorney's fees and costs in bringing the action under 20 U.S.C.

§ 1415(i)(3)(j).  *See id.* at pp. 8–9 (prayer for relief).

After the Complaint was filed, the DOE paid the amounts due to M.F., the MCC, and

J.F.'s home-based service providers.  FAC ¶ 45.

On August 18, 2023, DOE moved to dismiss the Complaint as moot and unripe, under

Rule 12(b)(1), and for failure to state a claim, under Rule 12(b)(6), Dkt. 17, and filed a

memorandum of law, Def. Mem., and declarations in support, Dkts. 18–19.  On August 21, 2023,

the Court ordered M.F. to either amend her complaint or respond to the motion to dismiss.  Dkt.

21.

On September 8, 2023, M.F. filed the FAC.  It dropped the claim for tuition payment and

reimbursement but maintained its claim for reasonable attorney's fees and costs incurred in

bringing this action.  On September 22, 2023, DOE notified the Court that it would rely on its

previously filed motion to dismiss, *see* Dkts. 17–20, and associated filings.  *See* Dkt. 23.  On

October 6, 2023, M.F. filed a memorandum of law in opposition to the motion to dismiss.  Dkt.

24 ("Pl. Mem.").  On October 20, 2023, DOE filed a reply.  Dkt. 25 ("Def. Reply").

III.    **DOE's Motion to Dismiss Under Rule 12(b)(1)**

Because a Court must determine at the threshold whether it has subject matter jurisdiction

over a case, the Court considers first DOE's motion under Rule 12(b)(1).

### A. Applicable Legal Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113 (2d Cir. 2000) (citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation omitted). Additionally, a court may properly refer to matter outside the pleadings when considering the existence of jurisdiction on a motion pursuant to Rule 12(b)(1). *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

### B. Discussion

DOE makes two arguments why the Court lacks subject matter jurisdiction: first, that M.F.'s claims were not ripe at the time of the filing of the Complaint; and second, that M.F.'s claims were moot by the time of the filing of the Amended Complaint.

#### 1. Ripeness

"Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts." *Nutritional Health All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998). For a cause of action to be ripe, and therefore justiciable, "it must present a real, substantial controversy, not a mere hypothetical question. . . . A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks and citations omitted). "The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication,

from entangling themselves in abstract disagreements." *Id.* (citations and internal quotation marks omitted).  In making this determination, this Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue" presented. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  However, it "may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

DOE's argument that M.F.'s claims were not ripe is that, as of March 9, 2023, when the Complaint was filed, it had purportedly paid all open invoices for tuition it had received from M.F.  Therefore, DOE argues, there was not then a live controversy over whether DOE would pay such invoices.  For this argument, DOE relies on brief (1.5-page apiece) factual declarations by DOE employees Theresa Crotty and Thomas Lindeman.  These recite DOE's timely payment of various tuition invoices.  These imply, but they do not directly state, that no reimbursement requests were pending on March 9, 2023.  *See* Crotty Decl.; Lindeman Decl.

M.F.'s showing on this point is more concrete.  M.F. represents that, before filing suit, she sent DOE several emails between January 25 and March 2, 2023, requesting that it cover J.F.'s tuition for the 2022–2023 school year that had become due.  As support, she attaches the several emails she sent to DOE over the course of two months that got no response.  Pl. Mem., Ex. A (emails M.F.'s counsel sent to DOE between October 5, 2022, and March 2, 2023).  The content of this sequence of emails accords with M.F.'s claim that, as of March 2, 2023, DOE had not responded, prompting M.F. to file suit seeking an order directing DOE to reimburse M.F. for the tuition payments she had made directly to MCC and to reimburse MCC for the tuition balance due.  *Id.*  In a February 24, 2023 email to DOE, for example, M.F.'s counsel states that M.F. planned to "fil[e] a federal enforcement action" to cause the tuition payments to be made. *Id.* at 3.  After not receiving a response, she informed DOE via an email dated March 2, 2023,

that M.F. was "desperately in need of their reimbursement" as "the school [had not been] paid since October." *Id.*

Plaintiffs' factual showing at this stage is easily enough to substantiate their claim of a "real, substantial controversy" as to DOE's obligation to pay for J.F.'s tuition. *Walsh*, 714 F.3d at 687. In contrast, DOE's account is not substantiated by contemporary documentation. DOE's unresponsiveness—its failure to cover identified tuition payments—is well pled in the Complaint. And its obligation to do so, as pled, did not depend "upon contingent future events." *Id.* 687; *see also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 446, 458 (S.D.N.Y. 2009) (claims held ripe "based on a number of present or threatened injuries"); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 274 (E.D.N.Y. 1982) (claim held ripe "because the injury complained of has, at least in part, already occurred"); *Burt v. Rumsfeld*, 322 F. Supp. 2d 189, 201 (D. Conn. 2004) (challenge to regulation held ripe because regulation "presented plaintiffs with an 'immediate dilemma'"). The Court thus finds M.F.'s claims ripe for review.

### 2.    Mootness

It is undisputed that the claims in M.F.'s original Complaint for tuition reimbursement and payments are now moot by virtue of DOE's full payment of those items, as reflected in plaintiffs' dropping of those claims in the FAC. *See Tann v. Bennett*, 807 F.3d 51, 52 (2d Cir. 2015) (dismissing claim under Rule 12(b)(1) as to which the Court cannot "grant [any] effective relief" and where "the issue[] presented" is "no longer live"). DOE argues that M.F.'s claim for fees and costs is moot, requiring dismissal under Rule 12(b)(1) on the ground that, ordinarily, "where there is no subject matter jurisdiction to proceed with the substantive claim, as a matter of law, that lack of jurisdiction bars an award of attorney's fees." *W.G. v. Senatore*, 18 F.3d 60,

64 (2d Cir. 1994) (cleaned up).  The Court denies that motion and finds it has subject matter jurisdiction to determine whether plaintiffs are entitled to an award of attorney's fees, substantially for the reasons stated by Judge Ramos in *Juca v. Carranza*, No. 19 Civ. 9427 (ER), 2020 WL 6291477, (S.D.N.Y. Oct. 26, 2020).

As Judge Ramos there recognized, the Second Circuit, on the one hand, has stated broadly that courts "lack jurisdiction to award attorney's fees" where they "lack subject matter jurisdiction" over the underlying claim, *McGinty v. New York*, 251 F.3d 84, 100 (2d Cir. 2001), but on the other, has emphasized that "[a] determination of mootness neither precludes nor is precluded by an award of attorneys' fees" and that "mootness is not determinative as to the propriety of an award of attorney's fees. . . .  The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party,'" *LaRouche v. Kezer*, 20 F.3d 68, 75 (2d Cir. 1994).  Consistent with that, the Circuit has remanded to the district court to determine attorney's fees when a claim has been rendered moot during the course of litigation. *See Juca*, 2020 WL 6291477, at *4 (citing *Associated Gen. Contractors of Conn., Inc. v. City of New Haven*, 41 F.3d 62, 68 (2d Cir. 1994) (remanding with directions to dismiss the action *after* deciding appellees' motion for reasonable attorney's fees) and *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 601–02 (2001) (evaluating merits of a request for attorney's fees where underlying claim has been mooted)).

In *Juca*, Judge Ramos applied these principles in a case in which, as here, parents sued the DOE for failing to pay for educational services, in breach of an agreement requiring DOE to pay for such services. *Id*. at *1.  After parents initiated the suit, DOE voluntarily agreed to pay. The parents moved for reasonable attorney's fees and costs.  DOE argued that the court lacked subject matter jurisdiction to address the fees motion because the underlying claim had become

moot. Judge Ramos rejected DOE's argument, explaining that "[b]ecause Plaintiffs' claim was mooted during the course of litigation, the Court may award fees and costs if Plaintiffs are 'prevailing parties'" under the IDEA. *Id.* at \*4. Thus, Judge Ramos proceeded to consider the attorney's fees motion, as to which DOE had moved to dismiss under Rule 12(b)(6) on the grounds that the plaintiffs were not prevailing parties.

This case is on all fours with *Juca*. M.F.'s tuition reimbursement claim became moot during this litigation, by virtue of DOE's voluntary payment of the outstanding tuition due. But M.F.'s claims were not moot at the time the Complaint was filed, and the present mootness of those claims does not inherently resolve whether M.F. is a prevailing party within the meaning of the IDEA, so as to be entitled to reasonable attorney's fees. Thus, as in *Juca*, because the fee question "turns . . . on [this] wholly independent consideration," "mootness is not determinative as to the propriety of an award of attorney's fees." *LaRouche*, 20 F.3d at 75. Put differently, if, hypothetically, M.F.'s underlying claims had become moot because DOE and M.F. had entered into a "settlement agreement that is expressly enforced by the court through a consent decree," then M.F. would be a prevailing party entitled to attorney's fees, and her fee claims would not be moot. *J.C. v. Regional Sch. Dist. 10*, 278 F.3d 119, 123 (2d Cir. 2002) (citation omitted).

The Court accordingly denies DOE's motion to dismiss under Rule 12(b)(1).

## IV.    DOE's Motion to Dismiss Under Rule 12(b)(6)

DOE separately moves to dismiss for failure to state a claim, on the grounds that, based on the pleadings, its voluntary out-of-court reimbursement and payment of J.F.'s tuition does not make M.F. a "prevailing party" under 20 U.S.C. § 1415(i)(3)(B), and hence she is not entitled to an award of fees and costs. On this point, DOE is correct.

### A.   Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where,

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of

entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court

must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the

plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however,

does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.

### B.   Prevailing Party Status

Under the IDEA, "in any action or proceeding brought under this section, the court, in its

discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is

the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). In *Buckhannon v. West

Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), the Supreme Court

addressed the "prevailing party" standard under civil rights statutes. Considering a claim for

attorney's fees under the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq*., and

the American Disabilities Act ("ADA"), 42 U.S.C. §§ 1201 *et seq*., the Court held that a

prevailing party is "one who has been awarded some relief by the court." *Id*. at 603. Thus, as

the Second Circuit has put the point, "one must either secure a judgment on the merits or be a

party to a settlement agreement that is expressly enforced by the court through a consent decree." *See J.C.*, 278 F.3d at 123 (holding that *Buckhannon* applies to attorney's fees cases brought under the IDEA). Results obtained without such a court order do "not supply a basis for an award of attorneys' fees because '[a] defendant's voluntary change in conduct . . . lacks the necessary judicial *imprimatur*' to render the plaintiff a prevailing party." *Id.* (quoting *Buckhannon*, 532 U.S. at 605).

Before *Buckhannon*, many Circuits, including the Second, had employed a so-called "catalyst theory," which "posit[ed] that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 74 (2d Cir. 2005) (quoting *Buckhannon*, 532 U.S. at 601). "Under the catalyst theory, a court could award attorneys' fees based solely upon a private agreement among the parties settling their dispute, even though no legal relief such as a consent decree had been obtained." *Id.* (quoting *Pres. Coalition v. Fed. Transit Admin.*, 356 F.3d 444, 450 (2d Cir. 2004)). The *Buckhannon* Court, however, expressly rejected the "catalyst theory" as a valid basis for awarding statutory attorney's fees, because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605. Thus, to qualify as a prevailing party, a litigant must demonstrate she: (1) attained "success on any significant issue in the litigation that achieve[d] some of the benefit sought in bringing the litigation"; (2) the relief obtained effected a "material alteration" of the legal relationship between the parties, that is not merely technical or *de minimis* in nature; and (3) the legal alteration was "judicially sanctioned." *B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*, 716 F. Supp. 2d 336, 344 (S.D.N.Y. 2010).

Applying these principles, M.F. cannot be found a prevailing party. The IDEA provides for an award of reasonable attorney's fees to a prevailing party in "any *action* or *proceeding* brought under this section." 20 U.S.C. § 1415(i)(3)(B)(i). The IDEA term "proceeding" refers to the administrative proceeding, which primarily consists of an impartial due process hearing. *Id.* § 1415(f). The term "action" refers to the "civil action," which "may be brought in any State court of competent jurisdiction or in a district court of the United States." *Id.* at 1415(i)(2)(A). The latter is at issue here, in that the FAC seeks an award of attorney's fees "incurred in *filing this enforcement action* to implement J.F.'s pendency rights under the IDEA and pendency implementation agreement." FAC at p. 1. It claims that "[b]ecause the DOE provided all the relief requested by the Complaint"—that is, the tuition reimbursement—"M.F. is entitled to attorneys' fees expended in this enforcement action." *Id.* ¶ 46.

M.F., however, does not qualify as a "prevailing party" in this federal action because the Court did not award or sanction any relief. Instead, after M.F. filed the initial Complaint, DOE voluntarily agreed to reimburse M.F. for historical tuition payments and to pay J.F.'s outstanding tuition at the MCC. This Court did not issue, and was never asked to issue, "a judgment on the merits." *J.C.*, 278 F.3d at 123. And DOE's voluntary decision to cover M.F.'s tuition was not reduced to a written agreement that could be "expressly enforced by the court through a consent decree." *Id.*

Because DOE's voluntary change in conduct was not judicially sanctioned, it "lacks the necessary judicial *imprimatur*" to form the basis for awarding attorney's fees to M.F. *Id.* As such, the pleadings preclude finding M.F. a "prevailing party" in this action within the meaning of the IDEA. *See, e.g., Juca*, 2020 WL 6291477, at *3–4 (DOE's "voluntary change in conduct" after parents initiated federal action "lacks the necessary judicial imprimatur to render them

prevailing parties"); *J.G. v. Kiryas Joel Union Free Sch. Dist.*, 843 F. Supp. 2d 394, 396
(S.D.N.Y. 2012) (parents not prevailing parties in federal action because they "did not win
judgment on the merits on any issue" nor were they "a party to a settlement agreement enforced
by this Court"); *J.S. v. Ramapo Cent. Sch. Dist.*, 165 F. Supp. 2d 570, 575 (S.D.N.Y. 2001)
(parents not entitled to prevailing party status because they entered into private settlement
agreement which "d[id] not entail the judicial approval and oversight involved in consent
decrees").

In opposing the motion to dismiss, M.F. shifts gear, suggesting that she could be found to
have prevailed in the underlying administrative action. That argument, however, is incompatible
with the FAC, which exclusively seeks attorney fees and costs incurred in "filing *this
enforcement action* to implement J.F.'s pendency rights under the IDEA and pendency
implementation agreement." FAC at p. 1. "This enforcement action" can only coherently be
understood to refer to the current action before this Court. It cannot refer to the due process
proceeding that M.F. had earlier filed, during which, on December 7, 2022, the pendency
implementation agreement was entered into, confirming that DOE would continue paying J.F.'s
tuition while the administrative proceeding was pending. It was DOE's alleged failure to meet
its duties under the pendency agreement that led M.F. to file the current federal action. And the
FAC does not allege that M.F. sought to enforce the pendency agreement by some other means,
such as by way of a separate administrative proceeding. *See, e.g.*, *Vultaggio ex rel. Vultaggio v.
Bd. of Educ.*, 216 F. Supp. 2d 96, 104 (E.D.N.Y. 2002), *aff'd*, 343 F.3d 598 (2d Cir. 2003) (under
20 U.S.C. § 1415(i)(3)(B)(i), a prevailing party "[i]n any action . . . brought under this section"
refers to "an action commenced in federal or state court," while a prevailing party "[i]n any . . .

proceeding," *id.*, refers to "those proceedings that appear expressly" in "sections 1415(a), 1415(b), and 1415(f) together").

In any event, even if the FAC had sought a fee award based on its securing the pendency implementation agreement, the FAC does not plead facts qualifying M.F. as a prevailing party. There are no averments that that agreement was ever "judicially sanctioned" by the IHO.  In the context of an IDEA administrative proceeding, "IHO-ordered relief on the merits . . . confers an 'administrative imprimatur' sufficient to support an award of attorney's fees." *B.W.*, 716 F. Supp. 2d at 344.  "Even a settlement placed on the record of an administrative proceeding constitutes sufficient 'judicial imprimatur' to qualify." *Id.*  But the FAC does not allege that the pendency agreement was ordered or sanctioned in any way by the IHO, as opposed to being a private agreement between DOE and M.F.[5]

Finally, *M.R. v. Ridly School District*, 868 F.3d 218 (3d Cir. 2017), and *K.R. v. Board of Education*, 66 F. Supp. 2d 444 (E.D.N.Y 1999), on which M.F. relies, are inapposite.  M.F. cites these cases to support that parents can recover attorney's fees for enforcing their child's statutory pendency rights.  That is indisputable—provided the enforcement of pendency rights is ordered or sanctioned by a court or an IHO.  Thus, in *M.R.*, the Third Circuit held that parents who got

---

[5] Nor does the FAC allege that M.F. prevailed on the merits of her second due process complaint, which claimed that a FAPE had not been offered to J.F. for the 2022–2023 school year.  The FAC alleges that that complaint was filed July 11, 2022, FAC ¶ 31; it does not indicate that that claim was resolved, let alone, as required for prevailing party status, with IHO involvement. *See, e.g., A.R.*, 407 F.3d at 78 ("had the agreements" between the parents and DOE "been purely private—occasioned by the proceedings but not ordered by the IHOs—[the parents] would not have been 'prevailing parties'"); *O'Shea v. Bd. of Educ.*, 521 F. Supp. 2d 284, 292 (S.D.N.Y. 2007) (denying fee motion because "there is no indication that the parties' settlement of the 2003–04 tuition claim was ever 'so ordered' by an IHO"); *Mr. L. v. Sloan*, 449 F.3d 405, 408 (2d Cir. 2006) (although parties entered into settlement agreement favorable to parent, it "was neither approved by the hearing officer nor incorporated into the order of dismissal," thus making it "purely private" and not "an administratively sanctioned change in the legal relationship of the parties that is judicially enforceable").

final relief in the form of mandatory pendency payments from the school district were considered prevailing parties under the IDEA, 868 F.3d at 230, but those parents "obtain[ed] a court order requiring the school district to reimburse them for the costs of the child's 'stay put' placements." *Id.* at 221.   Likewise, in *K.R.*, the parent brought an administrative proceeding challenging her son's IEP, and the court found that the parent was a prevailing party because she obtained "stay-put" orders in those proceedings confirming her son's pendency rights.   66 F. Supp. 2d at 447–49, 453.   Not so here.

Because there is no pleading that M.F. obtained any relief in this case via the sanction or order of a court, IHO, or any other judicial body, M.F does not qualify as a prevailing party under the IDEA.   She is not entitled to an award of attorney's fees.

## CONCLUSION

For the foregoing reasons, the Court grants DOE's motion to dismiss.   The Clerk of Court is respectfully directed to terminate the motion at Docket 17 and close the case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: February 22, 2024
New York, New York